UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MIRANT CANAL, LLC,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )    CIVIL ACTION NO.
                                      )    09-12216-DPW
LOCAL UNION 369, UTILITY WORKERS      )
UNION OF AMERICA,                     )
                                      )
        Defendant.                    )

MEMORANDUM
July 22, 2010

Plaintiff Mirant Canal, LLC seeks to vacate an arbitration award that was rendered in favor of Utility Workers Union of America and its Local Union 369.  In this award, the arbitrator found that Mirant did not have "just cause" to discharge two of its employees, and to discipline a third one.  Mirant contends that, in reaching this decision, the arbitrator exceeded the scope of his authority.  The Union has moved for judgment on the pleadings in its favor confirming the Award.  Applying the quite substantial deference generally accorded to arbitral awards, I have denied Mirant's motion to vacate the award and granted the Union's motion for judgment on the pleadings.

## I.  BACKGROUND

### A.   *The Parties*

Mirant is a limited liability company, which owns and operates a power plant on the Cape Cod Canal in Sandwich,

1

Massachusetts.  Mirant is an employer in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), codified as 29 U.S.C. § 185.

The Union is an organization representing employees in an industry affecting commerce within the meaning of the LMRA.  In this capacity, the Union is the certified collective bargaining representative for Mirant's operations, maintenance, and clerical employees.

**B.**   ***The Facts***

 1.   The Parties' Collective Bargaining Agreement

The present dispute is governed by the collective bargaining agreement signed between Mirant and the Union effective from June 1, 2006 through May, 31, 2011 (the "CBA" or "Agreement").

Under the CBA, Mirant retains several management rights. Specifically, the CBA provides, in relevant part, that:

> The Company shall at all times, subject to the provisions of this Agreement and the law, retain the sole right to manage its business and direct the work force, including, but not limited to the right to hire, discipline, suspend, discharge, promote, demote, or transfer for sufficient and reasonable cause . . . ; and the right to make and enforce reasonable rules and regulations as the Company may consider necessary for the operation of its business. . . .

CBA, Art. 9.1.  In this context, "[i]f the Union claims the Company . . . has exercised its' [sic] rights to suspend, discipline, demote or discharge in an unjust or unreasonable

2

manner, such claims shall be subject to the grievance procedure in Article 19." *Id.*

In addition, Mirant retains the right, pursuant to the CBA, to "establish rules and regulations relating to the maintenance of order, safety, Company issued equipment, attendance and discipline among its Employees, together with disciplinary penalties for their enforcement." *Id.* at Art. 9.2. The CBA requires, however, that a specific procedure be complied with prior to implementation of those rules:

> Such rules shall be posted on the Company bulletin board and sent to the Union by certified mail . . . , seven (7) days prior to implementation. Such rules and regulations, and any changes established shall be within the sole right of the Company to implement, but they will be reviewed with the Union before posting.

*Id.*

When either Mirant or the Union alleges a violation of the Agreement, the CBA provides for a specific "Grievance and Arbitration Procedure." *Id.* at Art. 19. At the outset, the parties shall make reasonable effort to settle the grievance in accordance with the time limits provided in the CBA. *Id.* at Art. 19.2. If a dispute is, however, not settled through this mechanism, the existing dispute may be submitted to a Board of Arbitration. *Id.* at Art. 19.5. The scope of the arbitrator's authority is limited in the following manner:

> No Board of Arbitration shall have the power to add to, or subtract from, or modify, any of the terms of this Agreement, or decide any question except the grievance

> submitted to the Board in accordance with the foregoing
> provisions. Where discipline is at issue, the Board shall
> only have the power to adjudicate the issue of 'just
> cause.'

*Id.* at Art. 19.7.

### 2.   Mirant's Corporate Policies

Pursuant to the authority granted under the CBA, Mirant implemented several policies, including the Electronic Communications Policy (the "ECP"), which was revised and reissued to employees periodically.   The ECP, which Mirant contends is pertinent was issued in 2007[1] and provides, in relevant part, that:

> All personnel have a responsibility to use Mirant's
> communications resources appropriately in conducting
> Company business. Foul, offensive or pornographic
> messages, communications, or material are prohibited. A
> person may not send, download, or distribute information
> that is threatening, provoking, insulting, demeaning,
> defamatory, disruptive, or offensive to any other person
> or harmful to the morale of Company personnel. . . .

The 2007 ECP also provides "[s]ome examples of behavior that *could* result in disciplinary action," including misuse of e-mail or internet access or downloading or distributing pornographic materials.   Any violation of the 2007 ECP "will subject the

---

[1] The Arbitrator ruled, however, that the 2005 version of the ECP was the applicable policy.   Award, p. 14 n.8.   No copy of the 2005 version was submitted in the record before me.   The Award referenced one of the provisions of this version, which is similar to that of the 2007 version listed below.   *Id.* at 4. Neither party contends that there is any material difference to this dispute between the 2005 and the 2007 versions.

individual to appropriate disciplinary action, up to and
including termination."

Mirant implemented two other corporate policies, i.e., the
Workplace Standards of Conduct Policy and the Workplace Free of
Harassment Policy, which are relevant here.  The 2006 Workplace
Standards of Conduct Policy provides that Mirant does not
tolerate and considers the "excessive or improper use of the
Company's electronic equipment, including Internet access" as
"'Terminable for Cause,' which means an individual's employment
with Mirant may be terminated" if such conduct were to occur.
Likewise, the 2006 Workplace Free of Harassment Policy prohibits
certain behaviors, including:

> Written or graphic material that denigrates or shows
> hostility or aversion toward an individual or group
> because of race, color, religion, national origin,
> gender, sexual orientation, age, disability or veteran
> status, which is graphically displayed and/or circulated
> in the workplace.
>
> . . . .
>
> . . . displaying visual material such as posters,
> cartoons, calendars, or pictures of sexual nature or
> depicting partially clad or nude individuals.

Any violation of the Workplace Free of Harassment Policy "will
subject the individual to appropriate disciplinary action, up to
and including termination."

On or about mid-2008, Mirant issued a poster titled "What
you need to know about Mirant's [ECP]" that was posted on
bulletin boards and other locations throughout Mirant's

facilities.   The poster provides, in relevant part, that:

> 2.  Mirant's policy bars use of its systems for creating,
> viewing, receiving or distributing sexually explicit
> materials or materials such as jokes, stories, cartoons,
> photos, movies, videos, recordings or similar materials
> that may be offensive on the basis of race, sex,
> religion, national origin, age or sexual orientation.
>
> . . . .
>
> 4.  Mirant will continue to enforce its [ECP], Workplace
> Free of Harassment Policy, and Workplace Standards of
> Conduct Policy through disciplinary action, up to and
> including termination of employment. Mirant has
> terminated employees for disregarding these policies.

### 3.   The Underlying Grievance and Arbitration Proceeding

On November 19, 2008, Operations Manager Bill Lange observed
Scott Nightingale, Michael Rebelo, and Joseph Faria viewing
sexually explicit or pornographic materials on a computer
terminal located in the maintenance shop.  The Company decided to
investigate internet use by those employees and found
considerable evidence that Nightingale and Rebelo had previously
visited sexually explicit websites.  Based on this evidence,
Mirant terminated Nightingale and Rebelo's employment for
violation of the ECP, the Workplace Standards of Conduct Policy
and the Workplace Free of Harassment Policy.  However, because
Mirant's investigation did not reveal any other misconduct on the
part of Faria, Mirant merely issued a supplemental reminder to
Faria.

On December 9, 2008, the Union filed a grievance on behalf
of the three employees.  Because the parties were unable to

resolve the dispute in accordance with the Grievance and

Arbitration Procedure set forth in Article 19.2 of the CBA, the

parties agreed to submit the matter to arbitration.   The

questions submitted to the selected arbitrator, Michael W. Stutz,

were as follows:

> 1) Did the Company have just cause to discharge Michael
> Rebelo?
> 2) If not, what shall be the remedy?
> 3) Did the Company have just cause to discharge Scott
> Nightingale?
> 4) If not, what shall be the remedy?
> 5) Did the Company have just cause to issue a
> Supplemental Reminder to Joseph Faria?
> 6) If not, what shall be the remedy?

Award, pp. 2-3.   Hearings on the Union's grievance were held on

June 17, 18 and August 26, 2009.

   4.   The Arbitrator's Award and the Parties' Related Motions

   The Arbitrator issued an arbitration award on November 29,

2009.   The Arbitrator found that Mirant did not have just cause

to discharge Rebelo and Nightingale.   Award, p. 1.   As a result,

the Arbitrator ordered that the termination of Rebelo and

Nightingale be converted to a one-day commitment making leave[2]

and that those two employees be reinstated to their position and

made whole for lost benefits under the CBA.   *Id.* at 1-2.

-----

[2]   A commitment making leave is the last step of the
discipline process before termination.   Award, p. 16 n.9.   This
sanction may be imposed "1) when the employee does not meet his
or her commitment to remedy a performance problem following a
Supplemental Reminder or 2) when behavior warrants a [commitment
making leave]."   *Id.*

Likewise, the Arbitrator found that Mirant did not have just cause to discipline Faria and therefore ordered that the discipline imposed on him be rescinded and removed for the Company's records.  *Id*. at 2.

In reaching this conclusion, the Arbitrator initially determined whether Rebelo, Nightingale, and Faria were guilty of misconduct as charged.  *Id*. at 15-16.  *First*, the Arbitrator found that Lange's testimony and evidence from the subsequent investigation, as well as Nightingale's admission that he viewed at work and emailed sexually explicit materials to his private email account, was sufficient to show that Nightingale had violated Mirant's prohibition against pornographic materials. *Id*.  *Second*, viewing Rebelo's denials to the contrary as "unbelievable," the Arbitrator held that Mirant had established that Rebelo was guilty of misconduct because he repeatedly searched for and viewed explicit sexual content on the internet. *Id*.  *Third*, the Arbitrator found that there was no evidence that Faria "solicited or otherwise encouraged" the display of sexually explicit materials by Nightingale and therefore concluded "that looking at the computer screen was not misconduct for which discipline was appropriate since the Company's disciplinary procedures include[d] non-disciplinary coaching sessions to remind employees of Company expectations and to correct unacceptable conduct."  *Id*. at 16.

8

Having found that Nightingale and Rebelo were guilty of repeatedly viewing sexually explicit content at work, the Arbitrator then turned to the issue of whether the penalty of termination was appropriately applied under the circumstances. *Id*. at 16-19.  As a threshold matter, the Arbitrator noted that it was clear that the Company could, and in fact did, prohibit sexually explicit materials at the workplace.  *Id*. at 17.  In this respect, according to the Arbitrator, the 2005 ECP that was shared with the Union during negotiations in 2006 was the applicable policy rather than the 2007 ECP which had not been shared with the Union as required under Article 9.2 of the CBA. *Id*. at 14 n.8.[3]

To assess the appropriateness of the disciplinary action, the Arbitrator first noted that Nightingale and Rebelo were long-term employees with clean records, who were entitled to progressive steps of discipline.  *Id*. at 17.  The termination of long term employees in good standing may be upheld, the Arbitrator observed, for conduct that is so serious that it fundamentally breaches the CBA, i.e. offenses such as theft, dishonesty, and gross insubordination.  *Id*. at 18.  Searching for and viewing pornography at work, he held, did not rise to the level of this type of offense "where, as here, there [wa]s no

---

[3] As noted above, *see* Note 1 *supra* and accompanying text, no material difference between the two versions of the ECP has been identified or argued by the parties.

evidence of harassment or other magnifying conduct." *Id*. at 19.
As a result, the Arbitrator concluded that a commitment making
leave, rather than termination, was the appropriate level of
discipline. *Id*.

Contending that the Arbitrator exceeded his authority in
reaching this conclusion, Mirant filed a complaint on December
30, 2009 requesting the Award to be vacated.  In its Answer to
the complaint, the Union cross-petitioned to enforce the Award.
The Union subsequently filed a motion for judgment on the
pleadings and Mirant moved to vacate the Award.

## II. STANDARDS OF REVIEW

### A. *Motion for Judgment on the Pleadings*

A motion for judgment on the pleadings under Federal Rule of
Civil Procedure 12(c) is treated "much like a Rule 12(b)(6)
motion to dismiss." *Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir.
2009) (quoting *Pérez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29
(1st Cir. 2008)).  "[T]o survive a motion to dismiss (or a motion
for judgment on the pleadings), the complaint must plead facts
that raise a right to relief above the speculative level, such
that the entitlement to relief is plausible." *Citibank Global
Mkts., Inc., v. Rodríguez Santana*, 573 F.3d 17, 23 (1st Cir.
2009) (internal citations omitted).  In ruling on Rule 12(c)
motion, a court must "recite the facts in the light most
favorable to . . . [the] non-movant, drawing all reasonably

supported inferences in his favor." *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 115 (1st Cir. 2009).

## B.   *Labor Arbitration Awards*

When a collective bargaining agreement provides for binding arbitration, "the district court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.'" *UMass Mem'l Med. Ctr., Inc. v. United Food & Commercial Workers Union*, *Local 1445*, 527 F.3d 1, 5 (1st Cir. 2008) (quoting *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 330 (1st Cir. 2000)).  In fact, this review "is 'among the narrowest known in the law.'" *Ramos-Santiago v. United Parcel Serv.*, 524 F.3d 120, 123 (1st Cir. 2008) (quoting *Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Employees*, 873 F.2d 425, 428 (1st Cir. 1989)).  The reason is that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960).

To the extent that the arbitrator does not substitute "his own brand of industrial justice," a court may not vacate an arbitration award unless it fails to "draw[] its essence from the collective bargaining agreement." *Id*. at 597.  The mere fact that a court is "convinced that the arbitrator committed a serious error" is not sufficient in itself to overturn the arbitrator's award, so long as the arbitrator "is 'even arguably

construing or applying the contract and acting within the scope of his authority.'" *Ramos-Santiago*, 524 F.3d at 124 (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Hence, the task of a court "is to determine whether the arbitrator exceeded his authority by failing to apply the contract in a plausible manner." *Salem Hosp. v. Mass. Nurses Ass'n*, 449 F.3d 234, 238 (1st Cir. 2006) (quoting *Labor Relations Div. of Constr. Indus. of Mass. v. Int'l Bhd. of Teamsters*, 29 F.3d 742, 746 (1st Cir. 1994)).

Nonetheless, as deferential as the standard of review is, an arbitration award may still be vacated if it is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." *UMass*, 527 F.3d at 4 (citation omitted). Overcoming this burden requires "some showing in the record, other than the result obtained, that the arbitrator[] knew the law and expressly disregarded it." *Ramos-Santiago*, 524 F.3d at 124 (quoting *Advest, Inc. v. McCarthy*, 914 F.2d 6, 9 (1st Cir. 1990)) (alteration in original).

### III. DISCUSSION

Mirant's main arguments for a decision to vacate the Award is that the Arbitrator exceeded the scope of his authority (1) by ruling on the enforceability of the 2007 version of the ECP, an

12

issue that was not before him, and (2) by reinstating Rebelo and Nightingale despite its finding that both grievants had violated the Company's policy.  Contending that the Arbitrator plainly did not exceed his authority, the Union requests that attorneys' fees and costs be awarded in its favor.

**A.  *The Arbitrator's Award Drew its Essence from the CBA in Ruling on the Enforceability of the ECP***

Mirant first contends that the Arbitrator exceeded his authority when he decided that the 2005 version of the ECP, rather than the 2007 version, was the applicable policy.  The Arbitrator's decision was based on Article 9.2 of the CBA, which requires that new corporate policies be sent by certified mail to, and reviewed by, the Union prior to implementation.  Award, p. 14 n.8.  Having found that "there [wa]s no evidence that subsequent iterations were shared with the Union," the Arbitrator concluded that the 2005 version, which was communicated to the Union during negotiations in 2006, was the applicable policy. *Id.*

Mirant urges the Arbitrator's role should be limited to determining whether it had just cause to discharge Rebelo and Nightingale and discipline Faria, an issue distinct from the enforceability of the 2007 ECP.  Mirant contends that, if the Union's intention was to contest the enforceability of the 2007 ECP, it should have filed a separate grievance within the time period provided under the CBA.  The Union's failure to do so

13

requires, according to Mirant, the Award to be vacated.   In
making this argument, Mirant relies on *El Mundo Broadcasting
Corp. v. United Steelworkers of America*, AFL-CIO CLC, 116 F.3d 7,
10 (1st Cir. 1997).   In *El Mundo*, an employer had filled a
position without posting it as required under the collective
bargaining agreement.   *Id.* at 8.   Although the company had
previously suggested filling this position with the union, the
union had failed to file a grievance within the time period set
forth in the agreement.   *Id.*   The First Circuit vacated the
arbitral award, holding that "the arbitrator enlarged the
agreement and exceeded his authority under the [collective
bargaining agreement]" when he found the untimely grievance to be
arbitrable.   *Id*. at 10.   However, unlike in *El Mundo*, there is no
dispute here that the grievance brought on behalf of the three
employees disciplined by the Company was filed in a timely
manner.   Rather, the dispute contrived by Mirant in this case is
whether the Union should have filed a separate grievance
regarding the implementation of the 2007 version of the ECP
within the time limit provided under the CBA, or whether such a
grievance could be encompassed in the employees' grievance.

Even assuming, in the absence of any record to support the
proposition, that there is a material difference between the 2005
and the 2007 ECP, *see* Note 1 *supra*, or that express reliance on
the 2007 ECP would compel a different award by the Arbitrator,

14

this factitious dispute provides no grounds to vacate the award.
To be sure, the scope of the Arbitrator's authority is limited in
Article 19.7 of the CBA, which provides, in relevant part, that:

> No Board of Arbitration shall have the power to . . .
> decide any question *except the grievance submitted to the
> Board* in accordance with the foregoing provisions. Where
> discipline is at issue, the Board shall *only* have the
> power to adjudicate the issue of 'just cause.'

CBA, Art. 19.7 (emphasis added).  Keeping these limitations in
mind, it is, nevertheless, appropriate for an arbitrator
assessing whether "just cause" exists to determine whether
employees were on notice of the applicable policy.  *See Enter.
Wire Co.*, 46 LA 359, 360-61 (1966) (assessing the discharge for
just cause of an employee requires, among others, deciding
whether the employee was put on notice of the possible
disciplinary consequences of his actions).  Prior to making such
an assessment, the arbitrator may consider whether the policy was
adequately issued, especially where, as here, the collective
bargaining agreement requires the Company to comply with a
specific procedure prior to implementing new policies.  Having
found that Mirant had failed to comply with the procedural
requirements provided under the CBA, the Arbitrator plausibly
concluded that the 2005 version of the ECP was the applicable
policy.

In any event, even if the Arbitrator had applied the 2007
ECP, it can hardly be disputed that he would have reached the

same result.  The 2007 ECP lists termination only as *one* of the possible forms of discipline; this policy therefore does not command that termination be imposed by Mirant for this type of violation.  In this connection, the 2007 ECP provides a list of "behavior that *could* result in disciplinary action," including misuse of e-mail or internet access or downloading or distributing pornographic materials.  The 2007 ECP further provides that "[a]ny violation of this policy will subject the individual to appropriate disciplinary action, *up to* and including termination." (emphasis added).

Accordingly, I conclude that the Arbitrator did not exceed the scope of his authority in ruling that the 2005 version of the ECP was the applicable policy in the light of Mirant's failure to comply with the procedure set forth in the CBA for implementing new policies.  Rather, it is clear that the Award drew its essence from the CBA on this issue which was, in any event, while not one of the questions expressly presented to the Arbitrator, simply part of the CBA context in which those questions were decided.

**B.   *The Arbitrator Did not Exceed the Scope of his Authority by Deciding the Appropriate Level of Discipline***

   1.   The Arbitrator's Authority to Review Disciplinary Actions

Mirant argues that the language of the CBA is clear and unequivocal that the Company has the sole right to manage its

business, including the right to decide the appropriate penalty for violation of its policies.  Mirant accordingly argues that the Arbitrator did not have unlimited discretion in reviewing the grievance, but that his role was limited to determining whether the actions of Nightingale and Rebelo amounted to violations of the Company's policies.  Having found that those actions amounted to policy violations, the Arbitrator should have concluded, Mirant urges, that termination was the appropriate disciplinary action.

I find Mirant's attempt to avoid the full text of the CBA to be misguided.  It is clear that when "the language of an agreement is clear and unequivocal, an arbitrator cannot give it a meaning other than that expressed by the agreement." *Poland Spring Corp. v. United Food and Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445,* 314 F.3d 29, 33 (1st Cir. 2002) (citing *Georgia-Pacific Co. v. Local 27, United Paperworkers Int'l Union*, 864 F.2d 940, 944 (1st Cir. 1988)).  Here, while the CBA clearly and unequivocally confers upon the Company the right to manage its work force by, among other measures, choosing the appropriate penalty in case of policy violations, the CBA also expressly provides that this right is, however, "subject to the provisions of this Agreement."  CBA, Art. 9.1.  The CBA specifically confers to the Arbitrator "the power to adjudicate the issue of 'just cause.'"  *Id.* at Art. 19.7.  Hence, the Arbitrator's role was not limited, as Mirant contends, to determining whether violations

17

occurred; rather, his role was also to assess whether the sanctions imposed by Mirant were appropriate.

This is true for at least two reasons.  *First,* this reading of the CBA draws its essence from the CBA as a whole, rather than rendering some of its provisions meaningless, as urged by Mirant through its blinkered reading of the CBA.  *Cf. Boston and Me. Corp. v. Brotherhood of Maint. of Way Employees*, 94 F.3d 15, 19 (1st Cir. 1996) (rejecting "the view that an arbitrator could exceed the scope of his authority by electing to consider the agreement in question as a whole.").  *Second*, the issues submitted to the Arbitrator expressly provide that if the Arbitrator found that the Company did not have just cause to discipline its employees, the Arbitrator had to determine which remedy was appropriate.  *See* Section I.B.3. *supra.*

Accordingly, I conclude that the Arbitrator had the authority under the CBA to determine the appropriate disciplinary action.

### 2.   The Arbitrator's Authority to Impose Lesser Discipline

In somewhat of a parallel argument to that resolved in the preceding section, Mirant argues that the Arbitrator exceeded his authority by imposing a lesser discipline on Nightingale and Rebelo on the ground that the misconduct of those employees was not misconduct that rose to the level of the most serious offenses.  Again, Mirant relies on its reading of the CBA, which for the reasons discussed above I have rejected, and on an

alleged lack of foundation supporting the Arbitrator's conclusion.

Quite to the contrary, I find the Arbitrator's decision to impose lesser discipline on Nightingale and Rebelo to be well-grounded.  To decide whether termination was appropriate, the Arbitrator first noted that Nightingale and Rebelo were long-term employees with clean records of discipline, who were entitled to notice and progressive steps of discipline.  Award, p. 17.  "The arbitrator's reading of the just cause provision to include a concept of progressive discipline" was appropriate.  *Boston Med. Ctr. v. Serv. Employees Int'l Union, Local 285*, 260 F.3d 16, 22 (1st Cir. 2001).  Further, the Arbitrator observed that the termination of long term employees in good standing was subject to a specific standard of discipline pursuant to which termination may be upheld for conduct that is so serious that it fundamentally breaches the CBA, i.e., offenses such as theft, dishonesty and gross insubordination.  Award, p. 18.

It was also appropriate for the Arbitrator, in assessing whether just cause existed, to consider "the relation of the degree of discipline to the nature of the offense and the employee's past record."  *Misco*, 484 U.S. at 34 n.5.  These principles in mind, the Arbitrator found that searching for and viewing pornographic materials at work "[wa]s not on its face misconduct that r[ose] to the level of a capital offense in the first instance where, as here, there [wa]s no evidence of

19

harassment or other magnifying conduct." Award, p. 19.  The

Arbitrator concluded that the discharge of Nightingale and Rebelo

was not for just cause and that "the final disciplinary step, a

commitment making leave, [wa]s the appropriate level of

discipline."  *Id*.

Having been asked whether there was just cause to terminate

Nightingale and Rebelo and, if not, to provide a remedy, "[t]he

arbitrator was free to conclude that there was no just cause for

discharging [Nightingale and Rebelo], but that there was just

cause for a lesser discipline."  *Boston Med.*, 260 F.3d at 22; *see

also Keebler Co. v. Truck Drivers, Local 170*, 247 F.3d 8, 13 (1st

Cir. 2001) ("Thus, in substance, the arbitrator found some degree

of insubordination, but not the sort of *gross* insubordination

sufficient to constitute just cause for immediate termination.").

This is particularly true, where as here, neither the CBA nor any

of the Company's policies listed termination as the sole or

mandated possible form of punishment for this type of offense.[4]

---

[4]  The CBA does not list any specific acts providing just
cause for termination.  As discussed in Section III.A. *supra*, the
2007 ECP merely provides a list of "behavior that *could* result in
disciplinary action," including misuse of e-mail or internet
access or downloading or distributing pornographic materials.  In
addition, both the 2007 ECP and the 2006 Workplace Free of
Harassment Policy provide that this type of behavior "will
subject the individual to appropriate disciplinary action, *up to*
and including termination."  (emphasis added).  Likewise, the
2006 Workplace Standards of Conduct Policy lists the "excessive
or improper use of the Company's electronic equipment, including
Internet access" as "'Terminable for Cause,' which means an
individual's employment with Mirant *may* be terminated" if such
conduct were to occur.  (emphasis added).

See Crafts Precision Ind., Inc. v. Lodge No. 1836 of Dist. 38, 889 F.2d 1184, 1185-86 (1st Cir. 1989) (affirming the arbitrator's decision to reduce the sanction for an employee's violation of a company policy from discharge to suspension without pay where the language of the collective bargaining agreement and corporate policies did not expressly list termination as the sole possible disciplinary action); cf. Poland Spring, 314 F.3d at 34 ("This Court has long held that once an arbitrator finds that an employee has committed an act specifically listed in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties' agreement.").

Accordingly, I conclude that the Arbitrator did not substitute "his own brand of industrial justice" nor did he exceed the scope of his authority in deciding that the appropriate level of discipline for Nightingale and Rebelo's misconduct was a commitment for making leave. Rather, in doing so, he merely exercised the discretion he was granted under the CBA.

## C.   *Attorneys' Fees and Costs*

Finally, the Union contends that attorneys' fees and costs should be awarded in its favor because Mirant has satisfied the requirement for such award.

Under federal law, "a court may award attorney's fees and costs to the winning party in a section 301 action if the losing party's position was 'frivolous, unreasonable, or without foundation.'" *Local 2322, Int'l Broth. of Elec. Workers v. Verizon New England*, *Inc.*, 464 F.3d 93, 100 (1st Cir. 2006) (quoting *Local 285, Serv. Employees Int'l Union AFL-CIO v. Nonotuck Res. Assoc., Inc.*, 64 F.3d 735, 737 (1st Cir. 1995)). This aspect to the case has, however, not been fully developed by the parties and accordingly, I have established a separate briefing schedule to address whether the Union is entitled to attorneys' fees and costs, and if so, the amount.  However, I will not further delay entry of judgment confirming the Arbitrator's Award while the question of attorneys' fees and costs is developed, addressed and decided.

## IV. CONCLUSION

For the reasons set forth more fully above, Mirant's motion to vacate the Award has been DENIED (Dkt. No. 11.), the Union's motion for judgment on the pleadings (Dkt. No. 9.) has been GRANTED and the Clerk is directed to enter judgment for the Union confirming the Award of Arbitrator Stutz dated November 29, 2009.


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE